UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

RODNEY R. MANK and  
LINDA J. MANK  
                      Debtor

Chapter 12  
Case No.: 13-21094

## MEMORANDUM IN SUPPORT OF CONFIRMATION

RODNEY and LINDA MANK, by their attorney, in support of their Second Amended Chapter 12 Plan (the "Plan"), and in response to the concerns raised by the Chapter 12 Trustee, the United States Department of Agriculture, and a judgment creditor, respectfully show this court as follows:

I.     <u>Feasibility</u> – the ability to make Chapter 12 plan payments totaling $29,000.00 per year - is a concern raised by all those who have considered this Plan. Although yet to be harvested and brought to market, in addition to various pumpkins and vegetables, the Manks have planted approximately 170 acres or soybeans and 40 acres of corn. Conservative estimates of yields may be summarized as follows:

|  | Number of Acres | Bushels per acre | Price per bushel | Total |
|---|---|---|---|---|
| Soybeans | 170 | 50 | $12.00 | $102,000.00 |
| Corn | 40 | 150 | $5.00 | $30,000.00 |
| Wheat (sold in July) |  |  |  | $9,850.00 |
|  |  |  |  | $141,850.00 |

Additional income from deer dressing and farm stand sales are anticipated.

Annual expenses are summarized as follows:

| | |
|---|---|
| Crop insurance | $3,200.00 |
| Property insurance | $1,000.00 |
| Property taxes | $8,900.00 |
| Farm rent | $7,200.00 |
| Seed for 2015 | $20,000.00 |
| Fertilizer for 2015 | $10,000.00 |
| Living expenses (from Schedule J) | $25,620.00 |
| Total Expenses | $75,920.00 |
| Surplus | $65,930.00 |

From that projected surplus, the Manks must, of course, pay income taxes. Equipment will need to be repaired or replaced over the course of the repayment period. Nonetheless, annual plan payments of $29,000.00 are feasible.

II.   Concerns of Parties in Interest

  A. The Chapter 12 Trustee

   1. Budget – an amended schedule "I" has been filed showing, on paper, feasibility. Feasibility is better shown above and is ultimately demonstrated by performance. The Trustee already holds $20,000.00 for the first distribution.

   2. Monthly reports - The Trustee is correct in pointing out that no monthly operating reports have been filed. Debtors might well have benefited from the discipline required to prepare such reports. However, this is not a dairy farm. Income does not vary daily or monthly. Rather, in this case, income and expenses come in big lumps: bills for seed, fertilizer, land rent, and property taxes all come due in non monthly cycles. Similarly, with no small amount of personal effort, by providence, weather permitting, so does income come in non monthly cycles.

   3. Property taxes -the 2014 County taxes on the Drake Road property and on the farmland itself have been paid in full. The 2014 County taxes on the "new farm house", along with school taxes on tax bills soon to be issued by the Brockport and Kendall Central school districts are in line for payment from the Autumn harvest.

4. Objection to the ATF claim - The second amended plan does, in fact conform to the agreed terms of debtors' objection to the claim of ATF. ATF has filed no objection to the plan which has been served upon it and its counsel.

5. Order of Plan Payment - The Trustee correctly points the conflict between paragraphs 12 and 18 of the Plan. If necessary, there should be no objection to the prompt filing of an amended plan deleting paragraph 12. That paragraph, is a vestige of a chapter 11 plan previously used by the undersigned and others.

6. Provision in Paragraph 18 for Multi Packaging - Similarly, there should be of no objection to the prompt filing of an amended plan clarifying that Multi Packaging is to be paid as a secured creditor with payments extending beyond the five-year payout to unsecured creditors, who are to be paid concurrently with payments to secured creditors.

7. Attorneys fees - the undersigned has kept contemporaneous records of some of the time expended in this case and, to the extent that such time measures value can and will submit an application for approval of the fees, hopefully for fees earned in obtaining confirmation of a chapter 12 repayment plan.

B. The Farm Service Agency - While grateful for the historic assistance of the FSA, debtors, by their attorney, respectfully disagree that the secured claim held by this helpful creditor must be paid coterminous, instead of merely concurrent with payments to unsecured creditors.

C. Mark Spychalski Lumber - The concerns of the lumber company, which is scheduled to receive over $7,000 on its long standing and unfortunately unpaid claim, are addressed in part by the amended schedule the setting forth the value of the unrippened crops in the ground on the filing date, July 15, 2014. As noted on the amended schedule "B", the value of those crops, as ripened and delivered in the Autumn of 2013, does not deduct the not insubstantial costs of labor in bringing those crops to market. An amended schedule "C" exempting 90% of the full value of those ripened crops has also been filed.

3

This creditor would appear to find further objection to the now filed liquidation analysis set forth by the Chapter 12 trustee in his report. This creditor argues, in essence, that this Court and a Chapter 7 trustee would compel the FSA to forgo it it's quick remedy under Article 9 against equipment and, in the name of marshalling, force the FSA to commence a foreclosure proceeding against the Debtors' home and farm, all for the benefit of unsecured creditors. Such a course would be improper.

This creditor rightly points out that this is not the first attempt of the Manks to reorganize their financial affairs in bankruptcy.

The Manks are acutely aware that this is their last opportunity to save their farm.

This is the first attempt of the Manks to reorganize their financial affairs under Chapter 12 of the Bankruptcy Code.

A 12 millimeter bolt should never have been expected to thread with a 13 millimeter nut.

III. Conclusion – The Plan is proposed in good faith, it pays more to unsecured creditors than they would receive in a chapter 7, it is feasible and should be confirmed.

Dated: Rochester, New York
August 22, 2014

William C. Rieth, Esq.
Attorney for Debtors
16 West Main Street, Suite 756
Rochester, New York 14614
(585) 232-6520